UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

ROBIN WILSON et al.                                                    PLAINTIFFS

v.                                          CIVIL ACTION NO. 2:07cv130-KS-MTP

LESTER SHOUP                                                          DEFENDANT

PLAINTIFF'S RESPONSE TO DEFENDANT'S
OMNIBUS MOTIONS *IN LIMINE*

Plaintiffs have answered "no objection" to several of Defendant's motions referenced below.  However, plaintiffs specifically reserve the right to object to the wording of the order granting any such motion.  Plaintiffs object to any order that would not make each ruling binding on <u>all</u> parties.

   I.   **DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE ANY AND ALL EVIDENCE, TESTIMONY OR ARGUMENT BY COUNSEL RELATING TO CLAIMS BY BRANDON JORDAN, INCLUDING THE RESOLUTION OF SUCH CLAIMS THROUGH SETTLEMENT, AT TRIAL IN THE ABOVE REFERENCED MATTER.**

   No objection.

   II.  **DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE ANY AND ALL EVIDENCE, TESTIMONY OR ARGUMENT BY COUNSEL RELATING TO CLAIMS BROUGHT BY PLAINTIFFS AGAINST COBLENTZ DISTRIBUTING, INC., INCLUDING THE RESOLUTION OF SUCH CLAIMS THROUGH DISMISSAL, AT TRIAL IN THE ABOVE REFERENCED MATTER.**

   No objection.

III. **DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE ANY AND ALL EVIDENCE, TESTIMONY OR ARGUMENT BY COUNSEL RELATING TO CLAIMS OF EMOTIONAL DISTRESS OF PLAINTIFF MATTIE SMITH, AT TRIAL IN THE ABOVE REFERENCED MATTER.**

Plaintiffs object that this is an improper partial summary judgment motion that is governed by Fed.R.Civ.Proc. 56, which is therefore untimely as well as an attempt to circumvent the rules of civil procedure.  Defendant seeks not just to exclude some evidence relating to a claim, but to dismiss claims in their entirety by excluding all evidence by which we may prove Plaintiff Mattie Smith's emotional distress:

> An order in limine should only be used as a shield and never to gag the truth and permit other evidence to mislead the jury because the order prevents such evidence from being rebutted. It should not ordinarily be employed to choke off an entire claim or defense, particularly in a criminal case. It is clearly improper for the court to allow a motion in limine which limits or refuses the introduction of relevant admissible evidence.
> . . . .
>
> The use of motions in limine to summarily dismiss a portion of a claim has been condemned, and the trial courts are cautioned not to allow motions in limine to be used as unwritten and unnoticed motions for summary judgment or motions to dismiss. … Clearly, a motion in limine may not properly be used as a vehicle to circumvent the requirements of rules of procedure.

75 Am. Jur. 2d Trial § 44 (2009).

Plaintiff Mattie Smith has clearly pleaded mental anguish and emotional distress claims in this case.  Undeniably, any evidence tending to show that she has suffered mental anguish is relevant and is -- by definition -- probative.  Since defendant seeks to exclude ALL probative evidence he is in reality seeking to exclude the claims of mental anguish and emotional distress. As the Chief Justice of the Rhode Island Supreme Court once wrote:

> Therefore, when a non-dispositive motion seeks to dismiss a substantial portion of the case, we see clear to strip the motion of its creative labeling and re-characterize it to conform to its true nature." Fn. 1
>
> FN1.   An apocryphal story that has been attributed to Abraham Lincoln alleges that the statesman said, "How many legs does a dog have if you count his tail as a leg? Four. you can call a tail a leg if you want to, but that doesn't make it a leg."

*BHG Inc. v. F.A.F. Inc.,* 784 A.2d 884 (R.I. 2001).  Id. at fn. 1.  Likewise, instead of a "motion in limine," we must call this motion what it is:  a partial summary judgment motion, which must be dismissed as untimely and not in conformity with the requirements of a Fed.R.Civ.Proc. 56 motion and due process.  Certainly, a substantial portion of Mattie Smith's damages case is found in her mental anguish and emotional distress claims.   If those claims are eliminated outside of a properly filed partial summary judgment motion, it would not be "harmless error":

> The trial court's ruling was erroneous because the motion in limine was in essence a substitute for a motion for partial summary judgment on a portion of the damage claim of appellant. We have held in the past that this is an improper use of a motion in limine. …. <u>Eliminating the majority of appellant's itemized damages is hardly harmless error</u>.

*Saunders v. Aloi*,  604 So.2d 18 (Fla. 1992) (emphasis added).

    Defendant also incompletely states the law regarding mental anguish and emotional distress claims.  Defendant argues that plaintiffs cannot present evidence of Mattie Smith's collision-related emotional distress because we do not have medical treatment records showing that she was treated for emotional distress.  However, Mississippi law just does not support their arguments.  First of all, <u>there is no requirement that mental anguish or emotional distress be proved by medical evidence</u>.  Defendant did not cite to any such authority, for no such authority exists.  Therefore, we may proceed solely with testimony from family members or others who have witnessed

manifestations of Mattie Smith's emotional distress, such as Mattie's mother, grandmother, father, grandfather, cousin and uncle..

Defendant cites authority for the proposition that "plaintiff must prove some sort of physical manifestation of injury or demonstrable harm, whether it be physical or mental."  However, there is "controlling" authority completely to the opposite in a case that has not been overruled:

> Where, as here, the defendant's conduct amounts to simple negligence, we take this opportunity to clarify that we have moved away from the requirement of proving some physical injury in addition to the proof of reasonable foreseeability. Our language in the previously cited cases, adopting the term "demonstrable harm" in place of "physical injury," indicates that the proof may solely consist of evidence of a mental injury without physical manifestation.

*Adams v. U.S. Homecrafters, Inc.,* 744 So.2d 736 (Miss. Jun 03, 1999) (NO. 98-CA-00368-SCT), rehearing denied (Sep 02, 1999).   This ruling goes a step further than merely stating that plaintiff need not use medical evidence to show emotional distress, it clearly states that there need be no physical manifestation at all.  This is directly the opposite of the "controlling" authority that Defendant cites, which is based on *American Bankers' Ins. Co. of Florida v. Wells*, 819 So.2d 1196, 1208 (¶ 40) (Miss.2001).  Normally you'd think that a newer, opposite holding would overrule the older one, but in *American Bankers'*, the Court specifically declined to overrule the "permissive" line of cases:

> We have applied the line of cases adopting the more restrictive majority view in the most recent holdings on this issue, although the cases applying the minority view have not been overruled.

*American Bankers',* 819 So.2d at 1209 (emphasis added).  The Fifth Circuit has also addressed this issue, and basically left the decision to the discretion of the trial court judge:

> *American Bankers'* did not overrule *Adams* or expressly
> adopt the more restrictive view as the correct standard for
> future cases. Although Mississippi courts have, at times,
> continued to apply the permissive view, the district court
> did not commit error by relying on the more restrictive
> *American Bankers'* standard.

*Edmonds v. Beneficial Mississippi, Inc.*, 212 Fed.Appx. 334 (5th Cir. 2007) (citations

omitted).

   It is apparent that since "Mississippi courts have, at times, continued to apply

the permissive view," id.,  the Fifth Circuit likely would uphold this Court's decision to

stick with the permissive view.  Moreover, there is an indication from a 2004 contract

case that the permissive view has prevailed:

> We take this opportunity to clarify the burden for recovery
> of mental anguish and emotional distress in breach of
> contract actions. Plaintiffs may recover such damages
> without proof of a physical manifestation. Furthermore,
> expert testimony showing actual harm to prove mental
> injury is not always required. However, the plaintiff must
> show (1) that mental anguish was a foreseeable
> consequence of the particular breach of contract, and (2)
> that he or she actually suffered mental anguish. Such
> generalizations as "it made me feel bad," or "it upset me"
> are not sufficient. A plaintiff must show specific suffering
> during a specific time frame. These requirements are not
> different from the requirements to establish physical pain
> and suffering."

*University of Southern Mississippi v. Williams*, 891 So.2d 160, 172-73 (Miss. 2004), rehg.

denied 2005 (emphasis added).

   Moreover, our claims are not limited to simple negligence; plaintiffs have also

directly pleaded recklessness.  "understanding the nature of the incident is essential in

establishing whether emotional distress is foreseeable. Additionally, in cases where the

defendant's conduct is more egregious, the plaintiff's burden of establishing specific

proof of suffering will decrease." *University of Southern Mississippi v. Williams*, 891

So.2d 160, 173 (¶ 33) (Miss.2004).   In fact, where the defendant was reckless or even

just "grossly careless" or "indifferent," mental anguish is recoverable even without any evidence of a physical injury:

> This Court has held that recovery for mental anguish can be allowable even when there is no presence of a physical injury…
>
> Stated another way, "the standard is whether defendant's behavior is malicious, intentional, willful, wanton, grossly careless, indifferent or reckless." *Leaf River Forest Prods., Inc. v. Ferguson,* 662 So.2d 648, 659 (Miss.1995). If there is outrageous conduct, no injury is required for recovery of intentional infliction of emotional distress or mental anguish.  Id.

*Summers v. St. Andrews Episcopal School*, 759 So.2d 1203, 1211 (Miss. 2000) (emphasis added).  The Complaint alleges outrageous conduct on the part of the Defendant, and we will present evidence that he was "grossly careless, indifferent or reckless."  Thus, we would not need to present evidence of demonstrative harm in order to be awarded emotional distress damages.

However, we only get to the damages issue after we have had evidence presented on that issue.  Our mental anguish claims have not been dismissed, and we are thus allowed by the rules to present evidence relevant to those claims.  Defendants may then argue to the jury that the evidence is insufficient to show emotional distress or mental anguish, but excluding all evidence on these claims prior to trial is an improper use of a motion in limine.

**IV.    DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE ANY AND ALL EVIDENCE, TESTIMONY OR ARGUMENT BY COUNSEL RELATING TO EVIDENCE NOT PRODUCED PRIOR TO THE DISCOVERY DEADLINE.**

Plaintiffs object.  The Court will issue a pretrial order setting forth the documentary evidence that may be offered by the parties.  Thus, an order granting this

motion in limine would be either redundant to the pretrial order or possibly in conflict with it.

Plaintiff also objects that this motion is too vague and unspecific, since it does not identify the particular evidence to be excluded -- plaintiffs maintain that all discovery they have has been produced, and we simply have no idea what evidence defendant is referring to.  Also, the Court issued an order on June 4 that had the effect of modifying the discovery cutoff, stating in pertinent part:

> …by agreement and concurrence of the Court the cut-off date for filing additional medical information or amendments to medical reports by the Plaintiff is June 3, 2009. The medical information that has been furnished as of this date will be what the Defendant can rely on in submitting information to his expert witnesses. Any additional supplementations of the medical records by the Plaintiffs will be considered by the Court prior to being filed. Plaintiff, however, shall continue to be obligated to file disclosures required by the Rules. The Defendant will have until June 22, 2009, to submit amended expert reports.

Order filed 06/04/2009, Doc. #156.  Thus, the March 1, 2009 deadline cited by the defendant is not entirely accurate.

Defendant wishes to exclude "any use of documents or testimony not produced or disclosed…"  Def. Motion, p. 5 ¶1.  A ruling granting this motion could be interpreted as excluding any testimony of any witness that the defendant did not depose, or excluding any testimony except for that elicited by the defendant in a deposition.  There were several depositions that defendant did not take, and thus there may be many facts that the defendant does not know, which could be bootstrapped into an argument that the evidence "was not disclosed."  Again, defendant is vague and non-specific about what evidence he is talking about, and this motion should therefore be denied.

V.     **DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE ANY AND ALL EVIDENCE,
       TESTIMONY OR ARGUMENT BY COUNSEL RELATING TO DEFENDANT LESTER
       SHOUP'S PAST DRIVING HISTORY TO INCLUDE ANY TRAFFIC TICKETS AND/OR
       ACCIDENTS, AT TRIAL IN THE ABOVE REFERENCED MATTER.**

No objection so long as (1) this ruling is not limited to defendant Lester Shoup, but also is applied to all parties and witnesses, and (2) defendant Lester Shoup updates his discovery and deposition responses prior to trial in order to clarify his "past driving history to include any traffic tickets and/or accidents."  Defendant's last discovery responses regarding these issues were at his deposition on December 11, 2007.  If the evidence relating to these issues has changed since that date, we should be apprised of the new/changed evidence before a ruling is given on this motion.

VI.    **DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE ANY AND ALL EVIDENCE,
       TESTIMONY OR ARGUMENT BY COUNSEL RELATING TO THE
       CONSERVATORSHIP OF PLAINTIFF WILSON, AT TRIAL IN THE ABOVE
       REFERENCED MATTER.**

We object in large part, but have no objection to a limiting instruction that would cure the defendant's objections, and have no objection to excluding the actual judgment (Exhibit 1) entered by the Chancery Court.  However, the jury has a right to know that a legal apparatus is in place to protect their award of damages from abuse.

"Generally, only the guardian of a ward's estate may bring a lawsuit on behalf of a ward. A general guardian, committee, conservator, or other like fiduciary may sue or defend on behalf of his or her minor or incompetent ward in federal court."  39 Am. Jur. 2d Guardian and Ward § 152, citing Fed.R.Civ.Proc. 17(c), which provides that a "conservator" may sue or defend on behalf of his ward.  Whether or not plaintiff is mentally competent is simply not an issue -- in Mississippi, "[i]ncompetence is not a sole issue in determining whether a conservator has the power to act on behalf of a ward since a conservator has the power to act for a ward who is also mentally competent." *USF&G v. Conservatorship of Melson*, 809 So.2d 647, 659 (Miss. 2002).   Thus, plaintiff

Robin Smith, who is under a conservatorship and has two conservators appointed, has the right under Fed.Rule.Civ.Proc. 17(c) to have her conservators sue or defend on her behalf.  Her conservators have the powers and duties of a guardian under Mississippi and federal law, such as the right and responsibility to represent her in Court:

> After establishment of such protective procedures, the duties, responsibilities and powers of a guardian or conservator are the same. Miss.Code Ann. § 93-13-259 (1972). *See also* 51 Miss.L.J. 239, 266 (1980).

*Harvey v. Meador*, 459 So.2d 288, 291-92 (Miss.,1984).  The conservators cannot adequately meet their duties in this case without testifying as to the reason for the conservatorship.

As defendant acknowledges, our core claims are that plaintiff is brain damaged with a loss of intelligence.  We have documentary and testimonial evidence that she is more susceptible to influences of others and less capable of handling large sums of money.  True stories abound about people who have received large awards from lawsuits only to be flat broke in a matter of months (undersigned counsel has personally witnessed this outcome multiple times).  There almost seems to be a rule -- the larger the award, more quickly it evaporates.

Certainly, this sort of behavior is common knowledge.  How can we ask a jury to award millions of dollars to a brain-damaged individual without also assuring the jury that a legal apparatus is in place to insure that the money will go toward its intended purpose?  Without the testimony of the conservators, the jury would be left with the mistaken belief that Robin Smith or her family or friends could waste the award, even if through no fault of her own.  Thus, the lack of testimony regarding the conservatorship would be prejudicial to her ability to argue her case for damages.

If the conservators are denied the right to testify on behalf of their ward,  the plaintiff would be severely prejudiced, and would be denied the protection of the

conservatorship that the sovereign state of Mississippi has afforded her.  There are two conservators, Mr. Jacky McDaniel (plaintiff's father-in-law) and Mr. William Kerst, CEO of a trust company managing a half-billion dollars in assets.  The conservators are legally bound to act as fiduciaries, and are constrained by the statutory laws of the State of Mississippi as to how the money received from the jury may be invested, and for what purposes it may be used.  With two conservators, there is double protection, since they must both agree on the use and investment of the money.  There are also two people to sue if something went wrong.  Far from confusing the jury (as defendant argues), this information will aid the jury in its deliberations.

Defendants main argument is that the jury will figure that the Court has made a determination that plaintiff Robin Smith suffered a "complete mental impairment" from the collision:

> If the fact that a conservatorship was established for Plaintiff Wilson was offered into evidence as proof of mental or physical injury, the jury would infer that a Court had in fact made the determination that Wilson suffered complete mental impairment from the alleged injuries she received in the accident.

Def. Motion, p. 8 ¶ 1.  This argument misses the point entirely, since we will not be offering the fact of the conservatorship "as proof of mental or physical injury."  As we previously told the Court and as defendant notes at the end of his motion, evidence of the conservatorship is meant merely to assure the jury that its award will not be wasted.

There is no need to tell the jury about the findings of the Chancery Court.  We have no objection to the exclusion of those findings, and would agree not to offer or discuss the "Judgment Appointing Conservator."  We would have no objection to a fairly worded cautionary instruction that the jury is not to infer from the "fact of the conservatorship" that her alleged incapacity was caused by the negligence of the

defendant.  Certainly, they will be instructed that the nature and extent of her injuries solely the jury's determination to make anyway.

Other limiting instructions would also be agreeable, so long as the conservators can still explain their duties and legal responsibilities regarding any award that might be made as a result of the verdict in this case.

**VII.    DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE ANY AND ALL EVIDENCE, TESTIMONY OR ARGUMENT BY COUNSEL RELATING TO THE PLAINTIFFS HAVING DAMAGES IN EXCESS OF THE AMOUNT SPECIFICALLY CLAIMED IN THE COMPLAINT AT TRIAL IN THE ABOVE REFERENCED MATTER.**

We object.  It is well-known and well-settled law that a complaint may be amended (formally or just by operation of law) to allow a greater award of damages than that pleaded for, and that the amendment may be done before, during, or after trial.  In *Wal-Mart v. Long*, the Mississippi Supreme Court explained that amendments to the *ad damnum* clause should be denied only if they "would cause *actual prejudice* to the opposite party":

> The rule regarding amendments is clear. Leave to amend should be freely granted whenever justice so requires. Miss. R. Civ. P. 15 cmt. *See also Moeller,* 812 So.2d at 962. Amendments should be denied only if they "would cause *actual prejudice* to the opposite party." *Id.* (emphasis added)…
>
> …Examples of when motion to amend may be prejudicial include: where it would burden the adverse party with more discovery, preparation, and expense, particularly where the adverse party would have little time to investigate and acquaint itself with the matter. *Id.* (cited in *Natural Mother,* 583 So.2d at 617). *See also Grossnickle*….

*Wal-Mart v. Long*, 852 So.2d 568, 571 (Miss. 2003).

Defendant cannot be said to have suffered any prejudice by being "surprised" by the fact that plaintiff is "suddenly" claiming damages over the $2 million dollars pleaded

in the Complaint.  In a letter sent to defendant's counsel on March 14, 2008, we explained at the outset that plaintiff had been accepted for long-term in-patient treatment, <u>and ended with a statement that her damages exceeded $10,000,000.00 (ten million dollars)</u>:

> This letter is a follow-up to the conversation that you and I had earlier today, confirming that Robin Wilson has been accepted into in-patient treatment at Timber Ridge Ranch NeuroRestorative Services…
>
> …Based upon Robin Wilson's case as it exists at this point in time, <u>my candid appraisal of her damages is in excess of your $10 million policy limits</u>.

Exhibit 2 (emphasis added).  Six days after receiving that letter, wherein we appraised plaintiff's damages as being "in excess of your $10 million policy limits," defendant filed a motion wherein he made a point of telling the Court on the first page of his memorandum that plaintiff is seeking "millions of dollars in damages" for "severe brain trauma":

> Plaintiff, Robin Wilson, alleges severe brain trauma and total and permanent disability as a result of the accident and is seeking millions of dollars in damages as an alleged result of same.

Def. Motion for Continuance Filed 03/20/2008, Doc. #43, ¶ 1.  At the hearing on this motion for a continuance, Defendant's counsel repeatedly stressed to the Court that plaintiff was seeking multiple millions of dollars in damages, and a six month continuance was granted over plaintiff's opposition.

On September 15. 2008, plaintiff timely served the report of her voc-rehab/life care planning expert, which was incorporated into the report of economist Charles Dennis, Ph.D., which was also served on that date.  The economist's report shows the following figures for damages:

**OPINION # 1: Present Value of Lost Wages With Fringe Benefits:  $523,555.**

**OPINION # 2: Present Value of Lost Wages Without Fringe Benefits:  $474,954.**

**OPINION # 3: Present Value of Life Care Plan - Option #1 High Cost: $2,458,323.37.**

**OPINION # 4: Present Value of Life Care Plan - Option #1 Low Cost: $2,236,551.29.**

**OPINION # 5: Present Value of Life Care Plan - Option #2 High Cost: $6,076,582.02.**

**OPINION # 6: Present Value of Life Care Plan - Option #2 Low Cost: $4,230,773.41.**

When lost wages are added to the life care plan value, we have a range of special damages that run from $2,711,505.29 to  $6,600,137.02, plus about $100,000.00 in past medical billings, making our special damages claim in a range from $2.8 to $6.7 million, plus pain and suffering damages.  Defendant has been aware throughout this case that we have been seeking damages well in excess of the $2 million initially pleaded in the Complaint.

Defendant quite incorrectly states that "[i]t has long been held under Mississippi law that the amount in the pleadings <u>permanently binds the Plaintiff</u> to the amount she may receive in damages."  Def. Motion ¶ 2, (emphasis added).  This is simply not true on any level, and the sources defendant cited do not stand for this proposition at all. Miss.R.Civ.Proc. 54(c) merely states that a "final judgment shall not be entered for a monetary amount greater than that demanded in the pleadings <u>or amended pleadings</u>." The rule thus recognizes that pleadings can changed to increase the monetary amount sought.  *Southland Enterprises* states:  "If the plaintiff puts on evidence that her damages are greater than pled, and defendant does not object, Rule 15(b) amends the complaint accordingly."  *Southland Enterprises, Inc. v. Newton County*, 940 So. 2d 937 (Miss.Ct.App. 2006).  This means that the Complaint is amended by operation of law to increase the damages allowed to the amount awarded.

Without citation to any authority, defendant argues that this is a "substantive law" issue, concluding that federal law is inapplicable.  We do not agree with this proposition, but there is no need to argue this since the result is the same either way.

For example, in a quite recent motor vehicle collision case before this Court, Your Honor noted:  "It is true that Mississippi procedural rules generally liberally allow plaintiffs to amend pleadings, including the *ad damnum* clause, to conform to a judgment entered by a court. "  *Adams v. Williams*, Slip Copy, 2009 WL 1585972 (S.D.Miss. June 4, 2009) (Starret, J.; emphasis added).  There are numerous similar holdings, but none that indicate that the amount sought in the original Complaint "permanently binds" the plaintiff.[1]

In fact, the Mississippi Supreme Court has been found it to be an abuse of discretion to refuse to amend the *ad damnum* clause of a complaint to increase the amount of the plaintiff's demand.  The following holding is a good illustration:

> The lower court overruled motions of the plaintiff to amend the *ad damnum* clause of the complaint. Through the years this Court has consistently held that amendments are to be allowed liberally. Rule 15, Miss.R.Civ.P., restates that policy. The appellant should have been permitted to amend the *ad damnum* clause of his complaint to increase the amount of his demand, both at the conclusion of his case on the first trial and before the beginning of the second trial.

*Bradley v. Findley*, 502 So.2d 1181, 1183 (Miss. 1987).  Similarly, in *CEF Enterprises*, a party sought to add claims and to "increase the *ad damnum* amount from $49,000 to $74,999." CEF Enterprises v. 838 So.2d 999, 1002 (Miss.App. 2003).  The *CEF* court ruled that even though this amendment was sought two years after the case was filed, the amendment should be allowed, noting another case where not allowing an amendment three weeks before trial was held to be an abuse of discretion:

---

[1] See, e.g., *Smith v. Associates Capital Bank*, 1999 WL 33537131 at *7 (N.D.Miss.) ("a plaintiff may assert a motion to amend pleadings even following entry of a judgment-i.e., it is possible that plaintiff could obtain a verdict in excess of the amount demanded in the Complaint and then move to amend the pleadings to conform with the jury award."), citing *Queen v. Queen*, 551 So.2d 197, 201 (Miss.1989); *Randle v. SmithKline Beecham Corp*., 338 F.Supp.2d 704, 712 (S.D.Miss. 2004); ("Under the pleading rules of Mississippi, the *ad damnum* clause of the Complaint may be amended even as late as at the close of evidence, before the case is presented to the jury."); F.M.B. v. Mega Life & Health Ins. Co., Slip Copy, 2009 WL 426435 (S.D.Miss. 2009) (same).

> Finally, CEF relies on *TXG Intrastate Pipeline Co. v. Grossnickle*, 716 So.2d 991 (Miss.1997). This Court is surprised by CEF's dependance on this case because, in our interpretation, it benefits Betts. In *Grossnickle*, the court held that not allowing an amendment <u>three weeks before trial</u> constituted an abuse of discretion by the trial court. *Grossnickle*, 716 So.2d at 1011-12. We fail to see how this case supports CEF's claims.

*CEF Enterprises, Inc. v. Betts*, 838 So.2d 999, 1006 (Miss.App. 2003) (emphasis added).

Federal and Mississippi state rules both provide that if a party objects that evidence is not within the issues raised in the pleadings, the Court at trial the "should freely permit" the amendment of the pleadings to conform to the evidence:

> (b) AMENDMENTS DURING AND AFTER TRIAL.
> (1) *Based on an Objection at Trial*. If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.

Fed.R.Civ.Proc. 15(b)(1). The Mississippi rule, which the defendant wants for the Court to follow, is basically the same, but adds: "<u>The court is to be liberal in granting permission to amend when justice so requires</u>." Miss.R.Civ.Proc. 15(b)(1) (emphasis added).

Without "actual prejudice," the Court "must" allow an amendment, and even if the high standard of actual prejudice" were shown, defendant's only remedy would be a continuance:

> If the opposing party objects but fails to persuade the court that such party will be prejudiced in maintaining the party's claim or defense, the court must then grant leave to amend the pleadings to allow the evidence on the issue.

> If the objecting party can show prejudice, the court may
> grant a continuance to meet the evidence, but should
> again allow amendment of the pleadings. 6 Wright &
> Miller, *supra*, Civil § 1495.

Miss.R.Civ.Proc. 15(b)(1),  Advisory Committee comments.

Certainly the defendant would love another delay, but "actual prejudice" is an extremely high standard that clearly is not met here.  In one case discussed in *Wal-Mart v. Long*, *supra*, a defendant appealed after the judge granted plaintiff's motion to increase the *ad damnum* clause, claiming that "the loss of the federal right to remove an action" caused him "to suffer actual prejudice."  As the Mississippi Supreme Court explained, "because the defendant failed to show that the <u>ability to defend was in any way hindered or that the trial was manifestly unfair</u>, the court held that the inability to remove the case was insufficient to demonstrate the kind and extent of prejudice to preclude the amendment."  *Wal-Mart v. Long*, 852 So.2d 568, 571 (Miss. 2003).

Defendant's only possible relief -- a request for a continuance -- would have to be granted only on a showing that Defendant was somehow prejudiced by the fact that the Complaint only asked for $2,000,000.00 in damages for plaintiff Robin Wilson, whereas we will be presenting evidence that her damages are quite a bit higher.  Besides, they were already granted a continuance once before in part because of the damages we were seeking -- as shown above, defendant knew even <u>before</u> they received a six-month continuance early last year that we were claiming damages in excess of $10 million, and used that fact as in their motion for a continuance.  We also have counted a total of six motions in which defendant has trumpeted the fact that plaintiff is seeking "damages totaling multiple millions of dollars," from March 2008 through May 2009.[2]  Five of those motions have been filed since we filed our expert

---

[2] Def. Motion for Continuance Filed 03/20/2008, Doc. #43, ¶ 1; Def. Memo. on Motion to Strike filed 12/19/2008, Doc. #114 at ¶ 1; Def. Memo on Motion to Dismiss filed 12/19/2008, Doc. # 112 at ¶ 1; Def. Motion to Strike filed 05/18/2009, Doc. # 146, ¶ 1; Def. Motion for Continuance filed 03/17/2009, Doc. #129 at ¶ 1; Def. Motion to Extend filed 04/20/2009, Doc. #139, ¶ 1.

reports on damages (see excerpt above).  For example, this passage is taken from Defendant's second motion to strike Dr. Bell's testimony under *Daubert*:

> hospital as a result of the subject accident.  Nevertheless, Wilson alleges that as a result of this accident, she suffered ==severe brain trauma and total and permanent disability and has asserted claims for actual and punitive damages totaling multiple millions of dollars.==

Def. Motion to Strike filed 05/18/2009, Doc. # 146, ¶ 1.  There is no conceivable prejudice to the Defendant that would allow another continuance on these grounds.

Ironically (since his Motions In Limine were filed after the deadline), defendant also argues that the deadline in the Case Management Order for amending the Complaint has already passed.  The CMO stated that "amendments to the pleadings shall be filed on or before September 8, 2007."  Under defendant's interpretation of the rules, it has been nearly two years since we could have even moved to amend the Complaint in order to raise the amount of damages claimed.  In the meantime, plaintiff's special damages have increased (for example, her June -July 2008 treatment at Timber Ridge cost in excess of $60,000.00), and we now have expert reports showing that her special damages alone far exceed the amount pleaded in the Complaint.  Certainly, we have good cause to amend the *ad damnum* clause.  Of course, the deadline in the Case Management Order does not overrule  federal or state Rules 15 and 54, which allow amendments to conform to the evidence before, during and even after trial, and even by operation of law without a formal amendment.  Thus, defendant's motion must be denied.

## VIII.   DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE ANY AND ALL EVIDENCE, TESTIMONY OR ARGUMENT BY COUNSEL RELATING TO THE SOCIAL SECURITY AWARD OF PLAINTIFFS, AT TRIAL IN THE ABOVE REFERENCED MATTER.

Plaintiff objects that the "Decision" from the SSA's "Office of Disability Adjudication and Review" is presumed under the federal rules of evidence to be

admissible and cannot be excluded under hearsay rules.  Exhibit 3.  Whether this document is a "judgment" is immaterial, since  it is a decision from an executive fact finder in a federal agency, and thus excepted from the hearsay prohibition by Fed.R.Evid. 803(8)(c):  "Both the United States Supreme Court and the Fifth Circuit Court of Appeals have already determined the decisions of administrative law judges and other executive fact-finders are considered admissible hearsay under Fed.R.Evid. 803(8)(c)."  *Green v. Louisiana Casino Cruises, Inc.*, 294 F.Supp.2d 870, 871 (M.D. La. 2003).[3]

A federal agency's report with opinions, findings of fact and conclusions of law are given such strong weight under the rules of evidence that they are <u>presumed to be admissible</u>.  "Opinions and conclusions, as well as facts, are covered by Rule 803( 8)(C). I, 488 U.S. 153, 169, 109 S.Ct. 439, 450, 102 L.Ed.2d 445 (1988). The Advisory Committee <u>'assumes admissibility [of 803( 8)(C) reports] in the first instance.</u>' Thus, evaluative reports are presumed not to be excluded under the hearsay rule unless there are indications of untrustworthiness."  *Moss v. Ole South Real Estate*, 933 F.2d 1300, 33 Fed. R. Evid. Serv. 609 (5th Cir. 1990) (emphasis added).  "In light of the <u>presumption of admissibility</u>, the party opposing the admission of the report must prove the report's untrustworthiness."  *Id*. (emphasis added).  Defendant made no attempt to prove untrustworthiness -- indeed, there is no basis for doing so in this matter.

Defendant instead makes his main argument under the Fed.R.Evid. 403 balancing test, but the Fifth Circuit has held that Rule 403 does not override the presumption of admissibility:

> Because Rule 403 permits the exclusion of probative
> evidence, it is an extraordinary remedy that must be used

---

[3] Fed.R.Evid. 803(8)(C) states:  "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (C) in civil actions and proceedings factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

> sparingly, FN9 and we have cautioned that <u>it may not be
> utilized to vitiate the presumption in favor of the
> admissibility of government reports</u> set forth in Rule 803
> (8)(C).  See *Moss*, 933 F.2d at 1308; *Cortes*, 977 F.2d at 201
> ("[T]he balancing test of Rule 403 should not be misused in
> such a way that would end the presumption that
> evaluative reports are admissible hearsay under Rule 803
> (8)(C).") (internal quotation omitted).

*Eason v. Fleming Companies Inc.*, 4 F.3d 989, 1993 WL 360736 at *4 (5th Cir. 1993)

(emphasis added); fn.9 cites to *Herrington v. Hiller*, 883 F.2d 411, 414 (5th Cir.1989);

*Dartez v. Fibreboard Corp.*, 765 F.2d 456, 461 (5th Cir.1985).  The Fifth Circuit thus

allowed into evidence a report from the EEOC.

Defendant argues, incorrectly, that "this determination by the social security

administration was made utilizing only the records from the Plaintiff s doctors, some of

which were hired experts for this case."  Attached as Exhibit 4 is an IME examination

report by psychologist Jan Boggs, Ph.D., and "Consultant's Notes" from Disability

Determination Services in Madison, Mississippi, signed by Samuel J. Popkin, Ph.D.  The

SSA's findings of fact states that "[t]he claimant was also examined by Dr. Boggs," and

then discusses Dr. Boggs' findings.  Exhibit 3, b/s 009036.  Clearly, this was a process

where independent evidence was gathered and examined before a final conclusion was

made.  This fact dovetails with another holding by the Fifth Circuit in *Eason v. Fleming*

*Companies Inc.*, supra.  The Court noted that the EEOC report was "merely a summary of

evidence," and thus not as extensive as the SSA report obviously is, but still found it

admissible:

> We have reviewed the EEOC determination in light of the
> entire record before us. Although the EEOC determination
> is <u>merely a summary of evidence in the record, it is a
> summary fully supported by the record</u>.

Id.  As shown above, the SSA's report is fully supported by the record, which contains an

independent psychological examination with memory testing and notes from an

independent disability determination consultant.

Given the independent evidence amassed and considered, there is no danger of "unfair prejudice."  The "Decision" deals with the central issue of this litigation, and thus is highly probative:

> Further, the decision of the ALJ <u>is clearly relevant, since it deals with the central issue of this litigation</u>. As such, any prejudicial effect that the decision might have does not substantially outweigh its probative value.

*Dresser v. The Ohio Hempery, Inc*., 1999 WL 1063067 (E.D.La. 1999) (emphasis added). The SSA's findings and conclusions report (Exhibit 3) thus more than meets all of the requirements for admissibility of a government report set forth by the Fifth Circuit and the federal Rules of Evidence.

Moreover, the fact that the Court may issue cautionary instructions to the jury relating to the proper use of this evidence further undercuts the Rule 403 argument. The trial court in *Eason v. Fleming Companies Inc*. had issued cautionary instructions to the jury, which reduced any chance of unfair prejudice:

> Moreover, the district court provided the jury with three cautionary instructions regarding the determination, and we conclude that these instructions sufficiently clarified the probative value of the determination for the jury…
>
> … Therefore, we conclude that, in light of the court's cautionary instructions, the general admissibility of government reports under Rule 403 as discussed above, and our review of the determination in light of the entire record, the district court did not abuse its discretion by admitting the EEOC determination.

*Eason v. Fleming Companies Inc*., 4 F.3d 989, 1993 WL 360736 at *4 (5th Cir. 1993).

Likewise the jury may be instructed that decision of the Social Security Administration is not binding on the trier of fact, and this will alleviate the possibility of unfair prejudice. For example, in *Smith v. Universal Services, Inc.,* 454 F.2d 154, 157 (5th Cir.1972), an EEOC decision containing "findings of fact made from accounts by different

witnesses, subjective comment on the credibility of these witnesses, and reach[ing] the conclusion that there is reasonable cause to believe that a violation of the Civil Rights Act has occurred," were not binding on the trier of fact, but still were admissible. In fact, the Fifth Circuit stated: "the district court is <u>obligated</u> to hear evidence of whatever nature which tends to throw factual light on the controversy and ease its fact-finding burden." *Id*. Similarly, in the *Green* case discussed *supra*, the court held that the jury may be instructed to "consider the ruling together with all of the other evidence in the case" and instructed "that it is not bound the Department of Labor's ruling and it may agree or disagree in whole or in part with the ruling." *Green*, 294 F.Supp.2d at 872.

   We agree with the defendant, however, that we certain portions of the Social Security file are not admissible:

> Rule 803(8)(C) by its terms allows only the introduction of the report setting forth factual findings; there is no provision for requiring the admission of an entire investigatory file. <u>On remand, the trial court need only admit the factual findings, including opinions and conclusions, of the Air Force report</u>. *See Beech Aircraft,* 488 U.S. at 169, 109 S.Ct. at 450. <u>It should not admit any portion of the investigatory file which contains otherwise inadmissible evidence</u>.

*Moss v. Ole South Real Estate*, 933 F.2d at 1310. Therefore, all documents from the investigatory file should be excluded. Also, the "Notice of Award," Exhibit 5, does not set forth factual findings and opinions -- it merely reports the conclusion that benefits would be awarded. It does not conform to the Rule 803(8) public records exception, and should be excluded as well.

   Moreover, the "Notice of Award" (Exhibit 5) should be excluded under the collateral sources rule. This is a different document than the "Decision," which is part of Exhibit 3. Under the collateral sources rule, the jury may not be told that the award was made or the amount of her monthly benefit. Thus, defendant may not argue for any

setoff.  The collateral sources rule, which is well-known, is a subject of plaintiff's

motions in limine filed March 6, 2009.  Defendant nonetheless argues:

> If the social security award were to be admitted in this
> matter, <u>the jury could then infer that any award due to the
> Plaintiffs should be reduced by the amount received in
> disability benefits</u>.  In fact, the Defendant would submit
> that if this Court were to allow the social security award of
> disability benefits into evidence then <u>the Defendant
> should be allowed to specifically ask the jury to consider
> the amount of her disability benefits</u>, when making a
> determination of whether or not the Plaintiff does in fact
> require an award in order to support herself and pay her
> medical expenses.

Def. Motion p. 15, ¶ 5.  Defendant thereby argues that he should be allowed to argue

for a set-off.  However, the Fifth Circuit has made it crystal clear that this is

unacceptable:

> The collateral source rule is a <u>substantive rule of law</u> that
> <u>bars a tortfeasor from reducing the quantum of damages
> owed to a plaintiff by the amount of recovery the plaintiff
> receives from other sources of compensation</u> that are
> independent of (or collateral to) the tortfeasor.  FN 21.
> Married to this substantive rule is an evidentiary rule that
> proscribes introduction of evidence of collateral benefits
> out of a concern that such evidence might prejudice the
> jury.

*Davis v. ODECO, Inc.*, 18 F.3d 1237, 1243, 1995 A.M.C. 608, 40 Fed. R. Evid. Serv. 821

(5th Cir. 1994), *cert. denied* 513 U.S. 819 (1994).  The Court noted many excellent

reasons for this rule, including: "Permitting tortfeasors to set-off compensation available

to plaintiffs from collateral sources would allow them to escape bearing the costs of

their own conduct."  Id. at fn. 21.

      The plaintiffs do not waive their collateral sources objection, and nothing herein

shall be construed to waive that objection in whole or in part.  The "Decision," Exhibit 4,

is a separate and distinct document from Exhibit 5, the "Notice of Award," which is

inadmissible as hearsay and under the collateral sources rule.  Unlike the "Notice of Award," the "Decision" does nothing to violate the collateral sources rule.  In a similar situation, the federal District Court of Maine held that the collateral source rule did not affect admissibility of Social Security records, which contained only an employee's own affirmations as to what he could and could not physically do, <u>and did not reveal whether employee was awarded Social Security benefits or reflect the amount of those benefits</u>:

> Finally, Mr. Rooney's concern about the collateral source rule has nothing to do with this exhibit. The exhibit <u>does not reveal whether Mr. Rooney was awarded social security benefits and does not reflect the amount of those benefits</u>. Instead, the exhibit contains only Mr. Rooney's own affirmations as to what he can and cannot physically do as of November 16, 2005. The record is clearly admissible.

*Rooney v. Sprague Energy Corp.*, 519 F. Supp. 2d 110 (D. Me. 2007) (emphasis added). Similarly, far from revealing whether plaintiff Robin Smith would be awarded benefits, the "Decision" demonstrates that an award had not yet been made by stating on the first page:  "We have not yet made a decision about whether you meet the nonmedical requirements, but we will make that decision soon."  Exhibit 3,  b/s 009031.

Nevertheless, it would be wise to give a cautionary instruction to the jury that they may not consider the "Decision" as an award of benefits, not to speculate on whether or not benefits were awarded, and that they are not to consider any possible past or future benefits as a set-off to their own award.

IX.     **CONCLUSION**

For each of the reasons cited herein, plaintiff respectfully requests that the Court rule favorably on plaintiff's objections noted above.

RESPECTFULLY SUBMITTED this 19th day of June, 2009.

**LEE LAW FIRM, LLC**

By: _____

K. Douglas Lee, MSB# 9887
22 Milbranch Road
Bldg. No. 100
Hattiesburg, MS 39402
Phone: (601) 583-4447
Fax: (601) 450-0152
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify this document has been served on Defendant, Lester Shoup, by and through his attorneys of record by filing it with the Court's ECF system, via email srobinson@rbisf.com  and pkennedy@rbisf.com Friday, June 19, 2009.

By:  Lee Law Firm, LLC

K. Douglas Lee, MS Bar No. 9887
Attorney for Plaintiff
22 Milbranch Road
Bldg. No. 100
Hattiesburg, MS 39402
kdl@leelaw.us
(601) 583-4447 voice
(601) 450-0152 facsimile